# EXHIBIT 1

 **CT Corporation**

**Service of Process Transmittal**
07/20/2018
CT Log Number 533725801

TO:    Barbara Hyman
       CNA Financial Corporation
       151 N Franklin St
       Chicago, IL 60606-1821

Claim AE224989
Response due 8/9

RE:    **Process Served in Florida**

FOR:   Continental Casualty Company  (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Nova Southeastern University, Inc., etc., as assignee of Derose Design Consultants, Inc., etc., Pltf. vs. Continental Casualty Company, Dft. |
| **DOCUMENT(S) SERVED:** | Notice(s), Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Broward County Circuit Court, FL<br>Case # CACE18016516 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Electronic Receipt on 07/20/2018 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service of this summons, exclusive of the day of service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Mike Piscitelli<br>Vezina, Lawrence & Piscitelli, P.A.<br>300 SW First Avenue<br>Suite 150<br>Fort Lauderdale, FL 33301<br>954-728-1270 |
| **REMARKS:** | Process received by Chief Financial Officer on 07/12/2018, and forwarded to C T Corporation System by electronic delivery on 07/20/2018. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/20/2018, Expected Purge Date: 07/25/2018<br><br>Image SOP<br><br>Email Notification, Barbara Hyman  barbara.hyman@cna.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 1200 South Pine Island Road<br>Plantation, FL 33324 |
| **TELEPHONE:** | 954-473-5503 |

Page 1 of  1 / MD

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

*18-000170964*

**CHIEF FINANCIAL OFFICER**
**JIMMY PATRONIS**
STATE OF FLORIDA

| | |
|---|---|
| NOVA SOUTHEASTERN UNIVERSITY, INC., A FLORIDA CORPORATION, AS ASSIGNEE OF DEROSE DESIGN CONSULTANTS, INC., A FLORIDA CORPORATION | **CASE #:**   **CACE-18-016516** |
| | **COURT:**   **CIRCUIT COURT** |
| PLAINTIFF(S) | **COUNTY:**   **BROWARD** |
| | **DFS-SOP #:** **18-000170964** |
| VS. | |
| CONTINENTAL CASUALTY COMPANY | |
| DEFENDANT(S) | |

SUMMONS, COMPLAINT, EXHIBIT

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by PROCESS SERVER on Thursday, July 12, 2018 and a copy was forwarded by ELECTRONIC DELIVERY on Friday, July 20, 2018 to the designated agent for the named entity as shown below.

    CONTINENTAL CASUALTY COMPANY
    DONNA MOCH
    1200 SOUTH PINE ISLAND ROAD
    PLANTATION, FL 33324

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent fillings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

MIKE PISCITELLI
VEZINA, LAWRENCE & PISCITELLI, P.A.
300 S.W. FIRST AVENUE
SUITE 150
FORT LAUDERDALE , FL 33301

AJ1

RECEIVED AS STATUTORY REGISTERED AGENT on 12 July, 2018 and served on defendant or named party on 20 July, 2018 by the Florida Department of Financial Services

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

NOVA SOUTHEASTERN UNIVERSITY, INC.,
a Florida corporation, as assignee of
DEROSE DESIGN CONSULTANTS, INC.,
a Florida corporation,

        Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY,

        Defendant.

CASE NO.

**SUMMONS**

Certified Process Server - J Lee Vause, Jr.
2nd Judicial Circuit, Leon, Florida, ID #81

7/12/18 Time 2:25 A/P

THE STATE OF FLORIDA:
TO ALL AND SINGULAR SHERIFFS OF SAID STATE:

GREETINGS:

      YOU ARE HEREBY COMMANDED to serve this summons and a copy of the Complaint in the above-styled cause upon the registered agent of Continental Casualty Company:

Continental Casualty Company
c/o Chief Financial Officer
200 E. Gaines Street
Tallahassee, Florida 32399

      Defendant is hereby required to serve written defenses to said complaint on plaintiff's attorney, Mike Piscitelli of Vezina, Lawrence & Piscitelli, P.A., 300 SW First Avenue, Suite 150, Fort Lauderdale, Florida 33301, within 20 days after service of this summons on defendant exclusive of the day of service, and to file the original of said written defenses with the Clerk of this Court either before service on plaintiff's attorney or immediately thereafter. If defendant fails to do so, a default will be entered against the defendant for the relief in the complaint.

      DATED on    JUL 11 2018

                          BRENDA D. FORMAN
                          As Clerk of the Court

                        By:



Mike Piscitelli
Florida Bar No. 364967
Vezina, Lawrence & Piscitelli, P.A.
The Museum Building

                        BRENDA D. FORMAN

300 SW First Avenue, Suite 150
Fort Lauderdale, FL 33301
Telephone: (954) 728-1270
Primary email: mpiscitelli@vlplaw.com
Secondary email: kmcfadden@vlplaw.com
Attorneys for Nova Southeastern University,
Inc., assignee of DeRose Design
Consultants, Inc.

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

NOVA SOUTHEASTERN UNIVERSITY, INC.,
a Florida corporation, as assignee of                          CASE NO.
DEROSE DESIGN CONSULTANTS, INC.,
a Florida corporation,

       Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY,

       Defendant.

_____/

## **COMPLAINT**

      Plaintiff, Nova Southeastern University, Inc. ("NSU"), as assignee of DeRose Design

Consultants, Inc.'s ("DeRose") post-loss insurance benefits, sues Defendant, Continental Casualty

Company (hereinafter "Continental"), and alleges as follows:

### **GENERAL ALLEGATIONS**

    1.     This is an action for damages in excess of $15,000.00 exclusive of attorney's

fees, costs and interest.

    2.     NSU is a corporation organized and existing under the laws of the State of Florida.

    3.     DeRose is a corporation organized and existing under the laws of the State of

Florida.

    4.     DeRose executed an Assignment of Claims to NSU giving NSU the right to

bring this action. A copy of the Assignment is attached as "Exhibit A."

5.    Continental is a foreign for profit insurance corporation authorized to do business in the State of Florida.

6.    Venue is proper in Broward County, Florida because the cause of action asserted in this complaint accrued in Broward County.

## FACTUAL
## BACKGROUND

7.    In the mid-2000's, NSU decided to construct a facility on its campus which would provide a central source of electrical and mechanical services for adjacent buildings ("the Project.") That facility was to include large pools, which are referred to as ice tanks, which would store water that is chilled in the evening when electrical costs are lower and then circulate the chilled water to the buildings being serviced during the day as the source of air conditioning.

8.    DeRose was the structural engineer on the Project, tasked with the structural design of the Project.

9.    On February 24, 2012, NSU, through the work of a consultant, discovered that the concrete slab under the ice tanks was underdesigned.

10.    NSU filed a lawsuit styled as *Nova Southeastern University Inc. v. Cannon Design Florida, Inc. and DeRose Design Consultants*, Broward County Circuit Court Case No.: 12-35481 (13) (the "Lawsuit").

11.    The Lawsuit alleged against DeRose that it breached its duties by failing to ensure that the Project Design was fit to serve the intended purpose by which NSU was injured and suffered damages.

12.    During the relevant times relating to NSU's alleged breach of duties, DeRose was insured by, among others, Continental.

13.     DeRose purchased an Architects & Engineers Professional Liability Policy of Insurance written through Continental effective January 11, 2012 to January 11, 2014 to provide, in part, liability coverage for errors and/or omissions in DeRose's work on the Project (the "Policies") (Composite Exhibit "B.")

14.     At all relevant times, Continental's policies provided up to $5,000,000.00 in coverage for errors and/or omissions of DeRose.

15.     Continental received the Lawsuit within the reporting period. The Lawsuit incorporated detailed knowledge dates within the Policies' effective periods, such as the February 24, 2012, discovery that the concrete slab foundation of the Project was underdesigned, yet Continental denied DeRose both coverage and a defense under its Policies for NSU's claims and the Lawsuit.

16.     NSU presented credible and persuasive evidence during the course of the Lawsuit that NSU has suffered damages which were the natural and proximate result of DeRose's structural designs and related work.

17.     The Lawsuit against DeRose and Cannon was ultimately settled.  A copy of the Settlement Agreement is attached as "Exhibit C."

18.     A consent Final Judgment was then entered against DeRose in the amount of $10,500,000.00 which has not been paid in full. The Consent Final Judgment against DeRose is attached as "Exhibit D."

19.     DeRose assigned to NSU all of its rights against the Policies issued by Continental.

20.     Any and all conditions precedent to filing this action have been satisfied or waived.

## Count I
## Breach of Insurance Contract

NSU re-alleges the allegations contained in Paragraphs 1 through 20.

21. This is an action against Continental for breach of insurance contract.

22. At all material times, DeRose had in full force and effect an insurance contract with Continental that insured DeRose for the type of damage suffered by NSU.

23. DeRose timely reported the claim to Continental.

24. On January 14, 2013, Continental denied coverage and refused to provide a legal defense. Exhibit "E".

25. Continental breached the insurance contract by denying coverage and refusing to pay damages associated with NSU's claim against DeRose resulting in a judgment being entered against DeRose.

26. As a direct and proximate result, DeRose and its assignee, NSU has been damaged.

27. NSU was forced to retain the undersigned attorneys and is obligated to pay them a reasonable attorneys' fee.

28. NSU is entitled to recover its reasonable attorneys' fees, prejudgment interest, and costs expended in prosecuting this action against Continental pursuant to Florida Statutes, Section 627.428.

WHEREFORE, Plaintiff, Nova Southeastern University, Inc. respectfully demands judgment against the Defendant Continental Casualty Company, for damages, costs of suit, prejudgment interest, and attorneys' fees as well as such other relief this Court deems just and proper, and demands trial by jury on all issues.

Dated:  July 10, 2018.

Respectfully submitted,

**Mike Piscitelli**
Florida Bar No. 364967
**Michael J. Friedman**
Florida Bar No. 650854
**VEZINA, LAWRENCE & PISCITELLI, P.A.**
The Museum Building
300 SW First Avenue, Suite 150
Fort Lauderdale, Florida 33301
(954) 728-1270 Telephone
(954) 728-1271 Facsimile
mpiscitelli@vlplaw.com
mfriedman@vlplaw.com
kmcfadden@vlplaw.com

**Thomas F. Panza**
Florida Bar No. 138551
tpanza@panzamaurer.com
**Richard A. Beauchamp**
Florida Bar No. 471313
rbeauchamp@panzamaurer.com
**PANZA MAURER & MAYNARD, P.A.**
2400 East Commercial Boulevard
Coastal Towers, Suite 905
Fort Lauderdale, Florida 33308
(954) 390-0100 Telephone
(954) 390-7991 Facsimile

*ATTORNEYS FOR NOVA SOUTHEASTERN*
*UNIVERSITY, INC.*

## ASSIGNMENT

In exchange for value received as more fully described in the Settlement Agreement, DeRose Design Consultants, Inc. ("DeRose"), as "Assignor," assigns to Nova Southeastern University, Inc. ("NSU"), as "Assignee," all claims, demands, and cause or causes of action of whatsoever kind and nature Assignor has had, now has, or may have against CNA and its Policy with Insurance provided by Continental Casualty (Policy No. 28-836-69-62 effective 1/11/2013 to 1/11/2014 with a knowledge date of January 11, 2012), and its parents, subsidiaries, and related entities, or any other person or persons, whether jointly or severally, arising out of the denial of coverage and refusal to defend Assignor in Case No. 12-35481 (13) in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

Dated   11-9-2015   .

Witnesses as to DeRose:

_____

_____

DeRose Design Consultants, Inc.

By _____

EXHIBIT

"A"

**CNA**
For All the Commitments You Make®

ARCHITECTS/ENGINEERS PROGRAM

**POLICY**
**DECLARATIONS**

| AGENCY BRANCH | PREFIX | POLICY NUMBER | INSURANCE IS PROVIDED BY CONTINENTAL CASUALTY COMPANY |
|---|---|---|---|
| 056125   969 | AEH | 28-836-69-62 | |

**NOTICE**

**THIS IS A CLAIMS-MADE POLICY. PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

1. NAMED INSURED:

   DEROSE DESIGN CONSULTANTS,
     INC.

2. ADDRESS:

   Suite 206
   470 South Andrews Avenue
   Pompano Beach, Florida 33069

3. **POLICY TERM**: From:  01/11/2013  To:  01/11/2014  AT 12:01 a.m.
   Standard time at **your** address shown above.

4. KNOWLEDGE DATE:  01/11/12

5. DEDUCTIBLE:
   a. $     25,000 Purchased Deductible
   b. $      1,250 Deductible Credit
   c. $     23,750 is Deductible per **claim** (including **claim expenses**)
   d. $      N/A   is Aggregate Deductible per **policy year**
                  (including **claim expenses**)

817909

_Jerry W. Agung_
Authorized Representative

Countersignature (if required)

GSL2199
Ed. 10/05

1

EXHIBIT
"B"

**CNA**

For All the Commitments You Make®

DECLARATIONS CONTINUED
Policy AEH 28-836-69-62  Effective  01/11/13

6. LIMIT OF LIABILITY:
   a. $  5,000,000 Per **claim** limit of liability (including **claim expenses**)
   b. $  5,000,000 Aggregate limit of liability per **policy year**
                   (including **claim expenses**)

7. INCEPTION DATE:  01/11/12  is the date of the first policy issued to
   **you** and continuously renewed by us.

8. $    2,581,086 is the Total Billings

9. Endorsements attached at policy **effective date**:

   G-136558-A09      State Provisions - Florida
   G-136559-A09      Amendatory Endorsement - Florida
   GSL2200           Professional Liability Policy

10. PREMIUM:                        11. INSTALLMENT PREMIUM PAYMENT:
    $   137,776 Standard
    $         0
    $   137,776 Total                          N/A
    +      0.00 FLIGA*
    +  $1,791.09 FCHF**  =  $139,567.09

    **Florida Catastrophic Hurricane Fund    *Florida Insurance Guarantee Fund


817909                    _Jennet W Wging_
                          Authorized Representative

                          _____
                          Countersignature (if required)

GSL2199
  Ed. 10/05                       2


For All the Commitments You Make®

**POLICYHOLDER NOTICE**
**NOTICE OF CHANGE OF ADDRESS**

Please note the following changes to the addresses to which notice of
a **claim** must be mailed, under SECTION VI. CONDITIONS, B.1.a.

    a.)  Attn: Intake Manager
         CNA Specialty Claim
         40 Wall Street
         7th Floor
         New York, NY  10005

         fax: 866-773-7504

         email: CNAA&EnewLossNotice@cna.com

**CNA**
For All the Commitments You Make®

PROFESSIONAL LIABILITY AND POLLUTION
INCIDENT LIABILITY INSURANCE POLICY

INSURED: DeRose Design Consultants, Inc.
Policy AEH-28-836-69-62   Effective 01/11/13   Endorsement Number   1

### STATE PROVISIONS - FLORIDA

We agree with **you** that the cancellation and non-renewal
provisions for this Policy are as follows:

I.   Cancellation

   A.   This Policy can be canceled by either the **Named Insured**
      or us.

      1.   The **Named Insured** can cancel this Policy at any
         time.  To do so, the **Named Insured** must:

         a.   return the Policy to us or any of our
            authorized representatives; or
         b.   mail a written notice to us;
         stating when the cancellation is to be effective.
         We must receive the Policy or written notice
         before the cancellation date.

      2.   If this Policy has been in effect for 90 days or
         less, we may cancel this Policy by mailing or
         delivering to the **Named Insured** written notice of
         cancellation, accompanied by the reasons for
         cancellation, at least:

         a.   10 days before the effective date of
            cancellation if we cancel for non-payment of
            premium; or
          b.   20 days before the effective date of
            cancellation if we cancel for any other
            reason.

         However, we may cancel immediately if there has
            been:
         (i)  a material misstatement or misrepresentation;
            or
         (ii) a failure to comply with the underwriting
            requirements stated by us.

      3.   If this Policy is in effect for more than 90 days,

817909

G-136558-A09            PAGE  1
(Ed. 09/99)



PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS PROGRAM

INSURED: DeRose Design Consultants, Inc.
Policy AEH-28-836-69-62  Effective 1/11/13      Endorsement Number   1

ENDORSEMENT CONTINUED

          we may cancel this Policy only for one or more of
the following reasons:
a.   Non-payment of premium;
b.   The Policy was obtained by a material
     misstatement;
c.   Failure to comply with underwriting
     requirements within 90 days of the effective
     date of coverage;
d.   A substantial change in the risk covered by
     the Policy; or
e.   The cancellation is for all insured under
     such policies for a given class of insureds.

If we cancel this Policy for any of these reasons,
we will mail or deliver to the **Named Insured**
written notice of cancellation, accompanied by the
reasons for cancellation, at least:
(i)  10 days before the effective date of
     cancellation if we cancel for non-payment of
     premium; or
(ii) 45 days before the effective date of
     cancellation if we cancel for any of the
     other reasons stated in item I.A.3.b. through
     I.A.3.e.

B.   Any notice of cancellation will be mailed or delivered
to the **Named Insured** at the last mailing address known
to us.  If notice is mailed, proof of mailing will be
sufficient proof of notice.

II.  Non-renewal

A.   If we decide not to renew this Policy we will mail or
deliver to the **Named Insured** written notice of
non-renewal, accompanied by the reason for non-renewal,
at least 45 days prior to the expiration of this
Policy.

B.   Any notice of non-renewal will be mailed or delivered to
the **Named Insured** at the last mailing address known to
us.  If notice is mailed, proof of mailing will be
sufficient proof of notice.

817909

G-136558-A09              PAGE  2
(Ed. 09/99)


For All the Commitments You Make®

PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS PROGRAM

INSURED: DeRose Design Consultants, Inc.
Policy AEH-28-836-69-62  Effective 1/11/13        Endorsement Number   1

ENDORSEMENT CONTINUED

    All other provisions of this policy remain unchanged.

817909                          Countersigned by Authorized Representative

G-136558-A09              PAGE  3
(Ed. 09/99)



PROFESSIONAL LIABILITY AND POLLUTION
INCIDENT LIABILITY INSURANCE POLICY

For All the Commitments You Make*

INSURED: DeRose Design Consultants, Inc.
Policy AEH-28-836-69-62   Effective 01/11/13   Endorsement Number   2

### AMENDATORY ENDORSEMENT - FLORIDA

1. We agree with **you** that the following Special Condition is
   added to this Policy

2. We agree with **you** that Section **I. COVERAGE AGREEMENTS**, sub-
   section E. is deleted in its entirety.

3. We agree with **you** that paragraph 2. of Condition H. Legal
   Action Limitation, of Section **VI. CONDITIONS**, is deleted in
   its entirety and replaced by the following:

   2. If, after the final adjudication or settlement of a
      **claim**, there is any dispute concerning tort allega-
      tions against us regarding the handling or settlement
      of any **claim**, **you** and we agree to submit such
      dispute to any form of alternative dispute acceptable
      to both parties.  Should **you** and we be unable to
      agree on the form of alternative dispute resolution,
      then such dispute shall be submitted to non-binding
      arbitration by the American Arbitration Association
      under its Commercial Arbitration Rules, and judgment
      on the award rendered by the arbitrators may be
      entered in any court having jurisdiction thereof.

All other provisions of this Policy remain unchanged.

817909                          Countersigned by Authorized Representative

G-136559-A09
(Ed. 03/06)



PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance.  All rights reserved.

## TABLE OF CONTENTS

I.    COVERAGE AGREEMENTS                          Page 2

II.   SUPPLEMENTARY PAYMENTS                        Page 3

III.  DEFINITIONS                                  Pages 3 through 8

IV.   EXCLUSIONS                                   Pages 8 through 10

V.    LIMITS OF LIABILITY/DEDUCTIBLE              Pages 10 through 12

VI.   CONDITIONS                                   Pages 12 through 18

GSL2200
(Ed. 10/05)

1

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance.  All rights reserved.

---

**YOUR PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY INSURANCE POLICY IS WRITTEN ON A "CLAIMS-MADE AND REPORTED" BASIS AND APPLIES ONLY TO THOSE CLAIMS FIRST MADE AGAINST YOU AND REPORTED TO US IN ACCORDANCE WITH SECTION VI. CONDITIONS, ITEM B. YOUR DUTIES IF THERE IS A CLAIM.**

---

Throughout this Policy, the terms "we", "us", and "our", refer to the Stock Insurance Company, named on the Policy Declarations when used in the text of this Policy.  The words displayed in bold face type will only have the meaning as set forth in Section III. DEFINITIONS.  We agree with **you** as follows:

## I.   COVERAGE AGREEMENTS

A.   We will pay all amounts in excess of the Deductible up to the Limit of Liability that **you** become legally obligated to pay as a result of:

1.   a **wrongful act**, or

2.   a **pollution incident** arising out of **your** activities or the activities of any person or entity for whom **you** are liable,

that results in a **claim** anywhere in the world, provided that on the Knowledge Date set forth in Item 4. on the Declarations none of **your** officers, directors, principals, partners, or insurance managers knew of any act, error, omission, or event that could reasonably be expected to become the basis of that **claim**.

B.   A **claim** must be first made against **you** during a **policy year** and reported to us in accordance with Section VI. CONDITIONS, Item B. **Your** Duties if there is a **Claim**.  Except as set forth in Section VI. CONDITIONS, Item C. **Your** Rights and Duties in the Event of a **Circumstance**, a **claim** is considered first made on the earlier of **your** or our receipt of notice of the **claim**.

C.   We have the right and duty to defend any **claim** against **you** seeking amounts that are payable under the terms of this Policy, even if any of the allegations of the **claim** are groundless, false, or fraudulent.  We will designate or, at our option, approve counsel to defend the **claim**.  We are not obligated to defend any **claim** or pay any amounts after the applicable Limit of Liability has been exhausted.

D.   We will not settle any **claim** without the informed consent of the first **Named Insured**.

GSL2200                                    2
(Ed. 10/05)

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance. All rights reserved.

E.  If a **claim** results in a punitive, exemplary, or multiplied
damage award, we will pay such award, up to the applicable
Limit of Liability, to the fullest extent permitted by law.

## II.  SUPPLEMENTARY PAYMENTS

Except as noted in subparagraph C. below, payments made under this
section are our costs, are not subject to the Deductible and are in
addition to the Limit of Liability shown on the Declarations.

A.  Free Pre-claims Assistance

Until the date a **claim** is made, we may pay for all costs or
expenses we incur, at our sole discretion, as a result of
investigating a **circumstance** that **you** report in accordance
with Section VI. CONDITIONS, Item C. **Your** Rights and Duties
in the Event of a **Circumstance**.

B.  Defendant Reimbursement

If we request **your** presence at a trial, hearing, deposition,
mediation, or arbitration, we will pay up to $300 a day per
person, subject to a maximum amount of $7,500 per **claim**.

C.  ADA, FHA, and OSHA

We will reimburse **you** for legal fees and expenses up to $25,000
per **policy year** in responding to regulatory or administrative
actions brought directly against **you** by a government agency under
the Americans with Disabilities Act of 1990 (ADA), the Fair Housing
Act (FHA), or the Occupational Safety and Health Act (OSHA),
provided that the regulatory or administrative actions:

1.  are first commenced during the **policy year**;

2.  arise out of the performance of **professional services**; and

3.  are reported to us prior to any legal fees or expenses being
incurred.

After we have paid $25,000 under this provision, any additional
amounts we agree to pay will be treated as **claim expenses** and
will be subject to **your** Deductible and be included in the Limit
of Liability for the **policy year** in which the action was commenced.
We will not be responsible for any fines or penalties.

## III.  DEFINITIONS

A.  **Auto** means:

1.  a land motor vehicle, trailer, or semi-trailer designed for
travel on public roads, including any attached machinery

GSL2200
(Ed. 10/05)

3

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance.  All rights reserved.

      or equipment; or

   2.   any other land vehicle that is subject to a compulsory or
       financial responsibility law or other motor vehicle insurance
       law in the state where it is licensed or principally garaged.

      However, **auto** does not include **mobile equipment**.

B.   **Bodily injury** means bodily injury, sickness, disease, mental
     anguish, or emotional distress sustained by a person, including
     death resulting from any of these at any time.

C.   **Circumstance** means an event, reported to us during the **policy
     term**, from which **you** reasonably expect that a **claim** could be
     made.

D.   **Claim** means a demand for money or services, naming **you** and
     alleging a **wrongful act** or **pollution incident**.

E.   **Claim expenses** means:

   1.   fees charged by an attorney designated or approved by us to
       represent **you**;

   2.   all other fees, costs, and expenses resulting from the
       investigation, adjustment, defense and appeal of a **claim**,
       if incurred by:

      a.   the designated attorney,

      b.   us, or

      c.   **you** with our prior written consent; and

   3.   premiums for bonds posted in connection with an appeal.
       However, we are not obligated to apply for or furnish any
       such bonds.

     **Claim expenses** do not include fees and expenses of independent
     adjusters or salaries of our officials or employees, other than
     fees and expenses charged by our employed attorneys who may be
     designated to represent **you** with **your** prior consent.

F.   **Domestic partner** means any person qualifying as such under any
     federal, state, or local laws or under **your** employee benefit plans.

G.   **Extended reporting period** means the period of time after the end of
     the **policy term** for reporting **claims** to us that are made against
     **you** during the applicable **extended reporting period** arising out of:

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance.  All rights reserved.

1. a **wrongful act** that took place prior to the end of the **policy term** that is otherwise covered by this Policy; or

2. activities that took place prior to the end of the **policy term** that result in a **pollution incident** that is otherwise covered by this Policy.

H. **Hostile fire** means one that becomes uncontrollable or breaks out from where it was intended to be.

I. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises **you** own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills, or

   b. road construction or resurfacing equipment such as graders, scrapers, or rollers;

5. vehicles not described in 1., 2., 3., and 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geo-physical exploration, lighting and well servicing equipment, or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

   a. equipment designed primarily for:

GSL2200
(Ed. 10/05

5

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY

(c) 2005, Member Companies of CNA Insurance.  All rights reserved.

       i.    snow removal,

      ii.   road maintenance, but not construction or
           resurfacing, or

     iii.   street cleaning;

  b.   cherry pickers and similar devices mounted on an **auto**
      or truck chassis and used to raise or lower workers; and

  c.   air compressors, pumps and generators, including spraying,
      welding, building cleaning, geo-physical exploration,
      lighting and well servicing equipment.

However, **mobile equipment** does not include any land vehicles that
are subject to a compulsory or financial responsibility law or other
motor vehicle insurance law in the state where it is licensed or
principally garaged.  Land vehicles subject to a compulsory or
financial responsibility law or other motor vehicle insurance law
are considered **autos**.

J.   **Named Insured** means the persons or entities listed in Item 1. on
     the Declarations.

K.   **Newly acquired subsidiary** means any entity, newly formed or
     acquired by a **Named Insured** during the **policy term**, in
     which such **Named Insured** has more than a 50% legal or
     beneficial interest.  However, no such entity will be deemed
     a **newly acquired subsidiary** beyond 90 days after the **Named
     Insured** acquires or forms it.  For coverage to continue beyond
     the first 90 days, the following conditions apply:

  1.   within 90 days of such formation or acquisition, the **Named
      Insured** must provide us with full particulars of such **newly
      acquired subsidiary**;

  2.   after receipt of such notice, we must agree to endorse this
      Policy to insure such **newly acquired subsidiary**; and

  3.   the **Named Insured** must pay the additional premium, if any,
      and agree to any amendment of the provisions of this Policy
      by reason of such formation or acquisition.

Coverage exists for **claims** made against a **newly acquired subsidiary**
only if, prior to the acquisition date or formation date, none of
**your** officers, directors, principals, partners, or insurance managers

GSL2200                         6
  (Ed. 10/05)

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c), Member Companies of CNA Insurance.  All rights reserved.

of the **Named Insured** or such **newly acquired subsidiary** knew of any act, error, omission, or event that could reasonably be expected to become the basis of that **claim**.

L.  **Nuclear facility** means the site where a nuclear reactor is located or where nuclear waste or material is disposed.

M.  **Policy term** means the period of time from the effective date and time of this policy to the date and time of termination as shown in Item 3. on the Declarations, or its earlier cancellation date. **Policy term** does not include any **extended reporting period**.  If the length of the **policy term** is the same as the **policy year**, the terms **policy term** and **policy year** are used interchangeably herein.

N.  **Policy year** means the period of one year following the effective date of the **policy term** or any subsequent one-year anniversary thereof.  As permitted by individual state law, a **policy year** may be extended or reduced by endorsement or by termination of the Policy.

O.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.  **Pollutants** does not mean heat, smoke, vapor, soot or fumes from a **hostile fire** or explosion.

P.  **Pollution incident** means the actual or alleged discharge, dispersal, seepage, migration, release or escape of **pollutants** into or upon land, the atmosphere or any watercourse or body of water, which results in **bodily injury** or **property damage** and did not arise from dishonest, fraudulent, malicious, or criminal conduct committed by **you** or at **your** direction or with **your** prior knowledge.

Q.  **Professional services** means those services that **you** perform for others on behalf of a **Named Insured** in **your** practice as an architect, engineer, land surveyor, landscape architect, construction manager, scientist, or technical consultant.

R.  **Property damage** means the following:

1.  physical injury to, damage to, or destruction of tangible property, electronic data, soil, surface water, groundwater, plants, or animals, including the resulting loss of use thereof;

2.  clean-up costs incurred by a third party or mandated by any governmental entity; or

3.  loss of use of tangible property that has not been physically injured or destroyed.

GSL2200
(Ed. 10/05)

7

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c), Member Companies of CNA Insurance.  All rights reserved.

S.    **Related claims** means all **claims** made against **you** and reported
to **us** during any **policy year** arising out of:

1.    a single **wrongful act**;

2.    . multiple **wrongful acts** that are logically or causally connected
by any common fact, situation, event, transaction, advice, or
decision;

3.    an activity resulting in a single **pollution incident**; or

4.    activities resulting in multiple **pollution incidents** that are
logically or causally connected by any common fact, situation,
event, transaction, advice, or decision.

T.    **Wrongful act** means an error, omission, or other act that causes
liability in the performance of **professional services** for others
by **you** or any person or entity, including joint ventures, for
whom **you** are liable.  A **wrongful act** cannot arise from dishonest,
fraudulent, malicious, or criminal conduct committed by **you** or at
**your** direction or with **your** prior knowledge.

U.    **You** or **your** means the **Named Insured**, a **newly acquired
subsidiary** and:

1.    any past or present partner, officer, director, member,
stockholder,  or employee of the **Named Insured** or **newly
acquired subsidiary** or leased personnel under the direct
supervision of the **Named Insured** or **newly acquired
subsidiary**, but only while acting within the scope of their
duties for the **Named Insured** or **newly acquired subsidiary**;

2.    a retired partner, officer, director, member, stockholder,
or employee of the **Named Insured** or **newly acquired subsidiary**,
but only for **professional services** or activities performed
for or on behalf of, at the request of, and for the benefit of
the **Named Insured** or **newly acquired subsidiary**.

IV.   **EXCLUSIONS**

We will not defend or pay under this Policy for any **claim**:

A.    for liquidated damages in excess of **your** liability caused by a
**wrongful act** or a **pollution incident**; for fines and penalties
imposed on **you**; or for the failure or refusal of a client to pay
money due **you**; or for return of fees paid to **you**;

B.    arising out of:

1.    **your** alleged liability under any oral or written contract or
agreement, including but not limited to express warranties or
guarantees; or

GSL2200                                    8
 (Ed. 10/05)

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY

(c), Member Companies of CNA Insurance.  All rights reserved.

2.   the liability of others **you** assume under any oral or written
     contract or agreement.

However, this exclusion shall not apply to **your** liability that
exists in the absence of such contract or agreement.

In a foreign jurisdiction where **your** liability to a client is
predicated only on contractual liability, subparagraph B.1.
does not apply except to the extent that **you** have agreed to
pay consequential or liquidated damages;

C.   arising out of the cost to repair or replace faulty workmanship
     **you** perform on any construction, erection, fabrication,
     installation, assembly, manufacture, or remediation, including any
     materials, parts, or equipment furnished in connection therewith;

D.   arising out of the sale or distribution of goods or products by
     **you**, or by others under license from **you**.  This exclusion does
     not apply to software created or modified specifically for a client
     in connection with **your professional services** for that client;

E.   made against **you** by any entity: .

     1.   which is operated, managed, or controlled by **you**;

     2.   in which **you** have an ownership interest in excess of 49%;

     3.   which wholly or partly owns, operates, or manages **you**;

F.   arising out of actual or alleged unlawful discrimination by **you**
     against **your** personnel or employment applicants or any obligation
     **you** have under any employment, workers' compensation, employers'
     liability, unemployment compensation, disability benefits, or
     other similar law;

G.   arising out of a **pollution incident** at, onto, or from property or
     facilities which are or were at any time owned or rented by **you** or
     by any person or entity in joint venture with **you**;

H.   for a **pollution incident** arising out of the ownership, maintenance,
     use, operation, loading, or unloading of any **auto**, aircraft,
     watercraft, or rolling stock.  This exclusion does not apply to:

     1.   **mobile equipment**;

     2.   a watercraft **you** do not own that is:

          a.   less than 26 feet long; and

          b.   not being used to carry persons or property for a charge;

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY

(c), Member Companies of CNA Insurance.  All rights reserved.

    3.  the operation of any of the equipment listed in Section III. DEFINITIONS, Items I.6.a., b., and c. in the definition of **mobile equipment**; or

    4.  a condition in or on an **auto** not owned or operated by **you**, and that condition was created by the loading or unloading of that **auto** by **you** or by any person or entity for whom **you** are legally liable;

I.  brought by **you** or on **your** behalf against another of **you** covered by this Policy;

J.  arising out of nuclear reaction, radiation, or contamination, under any circumstances and regardless of cause, within or originating from a **nuclear facility**;

K.  arising out of:

    1.  any **wrongful act**, **pollution incident**, or any matter, fact, situation, transaction, or event, for which notice was given by **you** under any professional liability or pollution insurance coverage prior to the effective date of this Policy; or

    2.  any other **wrongful act** or **pollution incident** whenever occurring, which is logically or causally connected by any common fact, situation, transaction, or event to the **wrongful act** or **pollution incident** specified in K.1. above.

## V.  LIMITS OF LIABILITY/DEDUCTIBLE

A.  Limits of Liability

    1.  The Limit of Liability shown under Item 6.a. on the Declarations is the maximum we will pay for any **claim** first made against **you** and reported to us during the **policy year**.

    2.  The aggregate Limit of Liability shown under Item 6.b. on the Declarations is the maximum we will pay for all **claims** first made against **you** and reported to us during the **policy year**.

    All Limits of Liability apply as excess over any Deductible amount.  The **policy year** Limits of Liability as set forth above may not be aggregated or transferred, in whole or in part, so as to provide any additional coverage with respect to **claims** first made or deemed made during any other **policy year**.  If Limits of Liability as specified above for any **policy year** are exhausted, our obligation for that **policy year** shall be deemed completely fulfilled and extinguished.

    3.  All **related claims** shall be considered a single **claim** first made and reported to us within the **policy year** in which the

GSL2200
(Ed. 10/05)

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY

(c), Member Companies of CNA Insurance.  All rights reserved.

earliest of the **related claims** was first made and reported
to us.

4.   **Claim expenses** are subject to and included within the
applicable Limit of Liability.

B.   Deductible

**You** shall have the obligation to pay up to the Deductible amount
shown in Item 5.c. on the Declarations resulting from a **claim**,
including but not limited to **claim expenses**, and, at a maximum,
the amount shown, if any, in Item 5.d. on the Declarations, for
all **claims** first made during the **policy year**.

C.   Reimbursement To Us

If we have paid any amounts in excess of the applicable Limit of
Liability, or within the amount of **your** Deductible, **you** shall
be liable to us for all such amounts, and, upon demand, shall pay
such amounts to us.

D.   More Than One Of **You**

Neither the applicable Limit of Liability nor **your** Deductible
shall be increased because more than one of **you** is included in
a **claim**.

E.   Risk Mitigation Credit

We will reduce **your** Deductible obligation for a **claim** by 50%, up
to $25,000, if, within 60 days of the date of our request, **you**
provide us with a copy of the written agreement that was executed
by **you** and **your** client prior to **your** performance of the agreed-
to **professional services** giving rise to the **claim** and **you**
demonstrate, to our reasonable satisfaction, the existence of any
three (3) of the following six (6) conditions:

1.   **Your** written agreement with **your** client specified payment
terms, including a schedule of when payments were to be paid
to **you**, which **you** consistently followed and enforced, or
documented **your** attempt to do so.

2.   Prior to the performance of the agreed-to **professional services**
giving rise to the **claim**, **you** executed a separate written
agreement with and obtained certificates of insurance evidencing
both Professional Liability and General Liability from each
architect, engineer, landscape architect, land surveyor,
contractor, or construction manager **you** engaged or who engaged **you**.

3.   **You** engaged with **your** client in a structured, contemporaneously
documented, pre-project planning process that produced a project
definition document or package that substantially addressed the
following project parameters (only "a" through "c" are required to

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance.  All rights reserved.

satisfy this condition for study-and report-only contracts):

    a.  project objectives (e.g., business, economic, aesthetic, other);

    b.  project constraints (e.g., budget, schedule, regulatory, other);

    c.  the basis for the design/investigation (e.g., site data/ requirements, utilities data/requirements, facility programming/requirements, equipment/technology requirements, alternatives to be considered);

    d.  project execution approach (e.g., staging, procurement strategy, delivery method, other); and

    e.  project monitoring and control procedures (e.g., quality, cost, schedule, other).

4.  Prior to delivery to **your** client of the instruments or deliverables of **your professional services**, a documented, independent peer review was completed, internally or externally, by a qualified professional to assess the likelihood that such instruments or deliverables would satisfy **your** client's objectives and would be in conformance with good professional practice.

5.  **You** engaged with representatives of the project owner, entities responsible for construction, and any other project stakeholders **you** deemed appropriate in a structured, contemporaneously documented constructability review process that provided for the timely integration of construction input into project planning, design, and field operations.

6.  **You** maintained a contemporaneously documented construction phase submittal log indicating the as-planned and actual dates **you** received and responded to every submittal and the action taken.

## VI.  CONDITIONS

A.  **Your** Rights and Duties as the First **Named Insured** on the Policy Declarations

The first **Named Insured**, on behalf of all of **you**, will be:

1.  authorized to make changes in the terms of this Policy with our written consent;

2.  authorized to receive any amounts we refund;

3.  the payee of any amounts paid under Section VI. CONDITIONS, Item G. Participating Provision; and

GSL2200                12
(Ed. 10/05)

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance. All rights reserved.

   4.   responsible for:

      a.  the payment of all premiums and Deductible obligations
         due us;

      b.  keeping records of the information we need for premium
         computation, and sending us copies as we may request;
         and

      c.  notifying us of any cancellation or non-renewal.

B.   **Your** Duties if there is a **Claim**

   If there is a **claim**, **you** must do the following:

   1.   promptly notify us in writing. This notice must be given to
      us within the **policy year** in which the **claim** is made or
      within 60 days after its expiration or termination. All
      **claims** reported during any **extended reporting period** shall
      be considered as having been made during the last **policy year**
      this Policy was in effect. If the **claim** is made during
      any applicable **extended reporting period**, then notice must
      be given to us within such **extended reporting period**.
      Notice of a **claim** must be sent to the attention of either
      of the following:

      a.  AE Professional Liability Claims
         CNA
         Two Wisconsin Circle
         Suite 900
         Chevy Chase, Maryland 20815

      b.  Victor O. Schinnerer & Company, Inc.
         AE Professional Liability Claims
         Two Wisconsin Circle
         Chevy Chase, Maryland 20815;

   2.   specify the names and addresses of the persons making a **claim**
      against **you** and provide us with information on the time,
      place, and nature of the **claim**;

   3.   immediately forward to us all documents that **you** receive in
      connection with the **claim**;

   4.   fully cooperate with us or our designee in the defense of a
      **claim**, including but not limited to assisting us in: the
      conduct of suits or other proceedings, settlement negotiations,
      and the enforcement of any right of contribution or indemnity
      against another who may be liable to **you**. **You** shall attend
      hearings and trials and assist in securing evidence and
      obtaining the attendance of witnesses;

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance.  All rights reserved.

5.    refuse, except solely at **your** own cost, to voluntarily make any payment, admit liability, assume any obligation, or incur any expense without our prior written approval; and

6.    pay the Deductible amount when due.

After **you** report a **circumstance** or a **claim** is made and **you** have the right under any contract to either reject or demand arbitration or other alternative dispute resolution process, **you** shall only do so with our prior written consent.

C.    **Your** Rights and Duties in the Event of a **Circumstance**

If **you** report a **circumstance** for which there may be coverage under this Policy, and **you** give us written notice containing as much detail as **you** can reasonably provide regarding:

1.    what happened and the **professional services** or activities **you** performed;

2.    the nature of any possible injury or damages; and

3.    how and when **you** first became aware of such **circumstance**;

then any **claim** or **related claim** that subsequently may be made against **you** arising out of such **circumstance** shall be deemed to have been made on the date we received written notice of the **circumstance**.

**You** will cooperate with us in addressing the **circumstance**, and refuse, except solely at **your** own cost, to voluntarily make any payment, admit liability, assume any obligation, or incur any expense without our prior written approval.

D.    Subrogation

If any of **you** have rights to recover amounts from another, those rights are transferred to us to the extent of our payment.  **You** must do everything necessary to secure these rights and must do nothing after a **claim** is made to jeopardize them.  We hereby waive subrogation rights against **your** client to the extent that **you** had a written agreement to waive such rights prior to a **claim** or **circumstance**.

E.    Premium

All premium charges under this Policy will be computed according to the rules, rates and rating plans that apply at the effective date of the current **policy term**.

GSL2200                               14
(Ed. 10/05)

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance. All rights reserved.

F.   Examination and Audit

**You** agree to allow us to examine and audit **your** financial books
and records that relate to this insurance. We may do this at any
time during the **policy term** or any extensions, and up to three
years after the end of the **policy term**.

G.   Participating Provision

The first **Named Insured** may be entitled to participate in our
profits. The profit sharing amount will be calculated in
accordance with an Experience Adjustment Plan developed by us,
in consultation with any organizations that we recognize as
commending our program.

H.   Legal Action Limitation

1.   **You** agree not to bring any legal action against us
concerning this Policy unless **you** have fully complied with
all the provisions of this Policy.

2.   If, after the final adjudication or settlement of a **claim**,
there is any dispute concerning tort allegations against us
regarding the handling or settlement of any **claim**, **you** and
we agree to submit such dispute to any form of alternative
dispute resolution acceptable to both parties. Should **you**
and we be unable to agree on the form of alternative dispute
resolution, then such dispute shall be submitted to binding
arbitration administered by the American Arbitration
Association under its Commercial Arbitration Rules, and
judgment on the award rendered by the arbitrators may be
entered in any court having jurisdiction thereof.

I.   Changes to Policy

None of the provisions of this Policy will be waived, changed or
modified except by written endorsement to this Policy.

J.   Transfer of Interest

For a transfer of interest or an assignment of this Policy to be
effective, the first **Named Insured** must obtain our written
consent.

K.   Other Insurance

If there is other collectible insurance, including but not limited
to project specific insurance, that applies to a **claim** covered by
this Policy, the other insurance must pay first, and this Policy is
excess over the other insurance. This Policy applies to the amount
of the **claim** that exceeds the available Limit of Liability and any
Deductibles or retention amounts of the other insurance.

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance.  All rights reserved.

L.   Cancellation/Non-Renewal

**Your** rights and ours are stated below and in the attached State
Provisions endorsement.

We will make the premium adjustment at the time that cancellation is
effective, or as soon as practicable after that time.  Premium return
will be computed pro rata if we cancel or if **you** cancel at the end
of a **policy year**.  But if **you** cancel at any other time, only 90%
of the pro-rated premium will be returned.

M.   Severability/Innocent Parties

Any of **you** who did not commit, participate in, or have prior
knowledge of dishonest, fraudulent, malicious, or criminal conduct,
or who did not fail to comply with Section VI. Condition B.1.,
shall have the coverage otherwise provided by this Policy.

N.   Estates, Legal Representatives, and Spouses

Coverage is afforded under this Policy to the estates, heirs, legal
representatives, assigns, spouses, and any **domestic partner** of any
natural person within the definition of **you** or **your**, but only
for a **claim** arising solely out of their status as such.  In the
case of a spouse or **domestic partner**, coverage is also afforded
under this Policy where such **claim** seeks damages from marital
community property, jointly held property, or property transferred
from any natural person designated in the definition of **you** or
**your** to their spouse or **domestic partner**.  No coverage is
provided for any act, error, or omission of an estate, heir,
legal representative, assign, spouse or **domestic partner**.  All
terms and conditions of this Policy, including without limitation
the Deductible applicable to any **claim**, shall also apply to any
**claim** made against such estates, heirs, legal representatives,
assigns, spouses, and **domestic partners**.

O.   **Extended Reporting Period**

1.   Automatic **Extended Reporting Period**

If this Policy is canceled or non-renewed either by us or by
the first **Named Insured** and the first **Named Insured** has
not obtained similar coverage, we will provide an automatic,
non-cancelable **extended reporting period** starting at the
termination of the **policy term**.  This automatic **extended
reporting period** will terminate after 60 days.

2.   Optional **Extended Reporting Period**

GSL2200                              16
 (Ed. 10/05)

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c) 2005, Member Companies of CNA Insurance.  All rights reserved.

If this Policy is canceled or non-renewed by either us or by
the first **Named Insured**, then the first **Named Insured** shall
have the right to purchase a non-cancelable optional **extended
reporting period**.

If purchased, the first sixty days of the optional **extended
reporting period** run concurrently with the sixty days of the
automatic **extended reporting period**.

3. Elimination of Right to an **Extended Reporting Period**

   a. There is no right to an optional **extended reporting
      period** if we do not receive written notice of the
      **Named Insured's** election to purchase the optional
      **extended reporting period** and full payment of the
      premium for such period within 60 days after the end
      of the **policy term**.

   b. There is no right to any **extended reporting period**
      if we cancel or refuse to renew this Policy do to:

      i.   non-payment of amounts due us; or

      ii.  non-compliance by **you** with any of the terms and
           conditions of this Policy; or

      iii. any misrepresentation or omission in the application
           for this Policy.

4. Additional Premium

   The additional premium for the optional **extended reporting period**
   shall be fully earned at inception and based upon the rates for
   such coverage in effect at the beginning of the **policy term**
   and shall be for one (1) year at 100% of the **policy term** premium
   divided by the total number of **policy years** in the **policy term**;
   three (3) years at 190% of the **policy term** premium divided by
   the total number of **policy years** in the **policy term**; and five
   (5) years at 250% of the **policy term** premium divided by the total
   number of **policy years** in the **policy term**.

5. **Extended Reporting Period** Limitations

   No automatic or optional **extended reporting period** shall
   apply to:

   a. any **claim** or proceedings pending at the inception date
      of such **extended reporting period**;

   b. any paid **claim**; or

PROFESSIONAL LIABILITY AND POLLUTION INCIDENT
LIABILITY INSURANCE POLICY
(c), 2005 Member Companies of CNA Insurance.  All rights reserved.

   c.   **claims** that are covered under any subsequent insurance
purchased by **you**, or that would be covered but for
exhaustion of the Limits of Liability applicable to
such **claims**.

6.   Automatic and Optional **Extended Reporting Periods** Limits of
Liability

Our liability for all **claims** reported during any automatic
and optional **extended reporting periods** shall be part of
and not in addition to the Limits of Liability for the final
**policy year**.

P.   Liberalization

If we adopt any revision to this form during the **policy term** that
would broaden coverage without additional premium, the broadened
coverage will apply to this Policy at the inception date of the next
**policy year**, but it will not apply to **claims** that were first
made against **you** prior to the effective date of such revision.

Q.   Economic and Trade Sanctions

This Policy does not provide coverage for **you**, any transactions,
or any part of a **claim** if uninsurable under the laws or regulations
of the United Stated concerning trade or economic sanctions.

R.   Headings

The descriptions in the headings of this Policy are solely for
convenience and form no part of the terms and conditions of coverage.

IN WITNESS WHEREOF, we have this Policy to be signed by its Chairman and
Secretary at Chicago, Illinois, but the same shall not be binding upon us
unless signed by our duly authorized representative.

Chairman

Secretary

GSL2200                    18

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

NOVA SOUTHEASTERN UNIVERSITY, INC.,
a Florida corporation,                                    CASE NO. 12-35481 (13)

      Plaintiff,

v.

CANNON DESIGN FLORIDA, INC.,
a New York corporation, and
DEROSE DESIGN CONSULTANTS, INC.,
a Florida corporation;

      Defendants.

_____/

### SETTLEMENT AGREEMENT

Nova Southeastern University, Inc. ("NSU") and DeRose Design Consultants, Inc. ("DeRose,") agree to settle in full the pending dispute between them as set forth below.

**WHEREAS**, in mid-2000's, NSU decided to construct a facility on its campus which would provide a central source of electrical and mechanical services for adjacent buildings ("the Project.") That facility was to include large pools, which are referred to as ice tanks, which would store water that is chilled in the evening when electrical costs are lower and then circulate the chilled water to the buildings being serviced during the day as the source of air conditioning.

**WHEREAS**, after the original design failed structurally, a remedial design was developed and constructed ("the Remedial Design").

**WHEREAS**, DeRose, as a subconsultant to Cannon Design Florida, Inc. ("Cannon") was the structural engineer on the Project.

**WHEREAS**, NSU filed the above captioned suit against DeRose and Cannon alleging against DeRose that it breached its duties by failing to ensure that the Project and Remedial Design


EXHIBIT
"C"

were fit to serve the purposes for which they were intended by which NSU was injured and suffered damages (hereinafter, the "Lawsuit").

**WHEREAS**, during the relevant times relating to NSU's alleged breach of duties, DeRose was insured by five liability insurance carriers: (1) Evanston Insurance Company (2) James River Insurance Company (3) Max Specialty Insurance (4) Alterra Excess & Surplus Insurance an (5) CNA Insurance (including insurance provided by Continental Casualty Company). (Hereinafter, the insurers above, excluding Evanston Insurance Company, shall be referred to as the "Referenced Insurers.")

**WHEREAS**, the Evanston Insurance Company policy, number AE-814841, with period of March 13, 2008 to March 13, 2009, and original limits of $2 million per occurrence and aggregate, with those limits subject to depreciation based on expenses incurred in the defense of this claim (the "Policy"), has been providing a defense to DeRose to the Lawsuit and has tendered its available policy limits.

**WHEREAS**, the limits of the Evanston Policy have depreciated significantly as a result of the necessary defense presented by DeRose to the claims made in the Lawsuit.

**WHEREAS**, the Referenced Insurers have denied to DeRose both coverage and a defense under their policies for NSU's claims and the Lawsuit.

**WHEREAS**, NSU has presented credible and persuasive evidence during the course of the Lawsuit that NSU has suffered damages which arguably were the natural and proximate result of DeRose's structural designs and related work; DeRose admitted that the original design of the walls was inadequate; and the Referenced Insurers denied to DeRose both coverage and a defense under their policies for NSU's claims, leaving DeRose under-insured and lacking sufficient funding for a full and complete defense in the Lawsuit, and subject to the potential for a judgment in excess of the available policy limits under the Policy.

**WHEREAS**, NSU and DeRose have agreed to compromise their disputes and it is specifically understood that the acceptance of the consideration and the execution and delivery of this Settlement Agreement is not to be considered as an admission of liability by any party, but is accepted in full settlement and compromise of all claims, disputed or otherwise, between NSU and DeRose only, and with no effect on NSU's claims or potential claims against Cannon, or NSU's claims or potential claims against James River Insurance Company, Max Specialty Insurance, Alterra Excess & Surplus Insurance, CNA Insurance (including insurance provided by Continental Casualty Company) or any other entity or individual.

**NOW, THEREFORE,** in exchange for the mutual consideration described below, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      DeRose shall assign to NSU all of its rights against the Referenced Insurers and under their respective insurance policies, pursuant to the Assignment attached as Exhibit A: James River Insurance Company (Policy No. 00036799-00) effective March 13, 2009 to January 11, 2010 with a general retroactive coverage date of March 13, 2007; Max Specialty Insurance Company and Alterra Excess & Surplus Insurance Company, and their successors in interest, Policies (MAX2PL0001091/MAX2PL0002768)-effective 1/11/2010-1/11/2012 with a general retroactive coverage date of May 4,1979 plus $1,000,000.00 coverage excess back to May 4, 2009; CNA and its policy (Policy No. 28-836-69-62) – effective 1/11/2012 to 1/11/2013 with a knowledge date of January 11, 2012; and CNA and its Policy with Insurance provided by Continental Casualty, Policy No. 28-836-69-62 effective 1/11/2013 to 1/11/2014 with a knowledge date of January 11, 2012; as they relate to the claims of NSU (collectively, the "Assigned Policies"), all of which have been duly notified of the pendency of the Lawsuit and have refused to defend or indemnify DeRose..

2.      DeRose , through its insurer, Evanston, shall pay to NSU all of the remaining limits on Evanston's policy, estimated to be above $1,400,000 as of November 1, 2015, but subject to continuous reduction for additional reasonable expenses already incurred or which will be incurred in

the process of resolution of the settlement and in the conduct of the captioned litigation until, or as part of, resolution.  As a partial payment of this sum, within 15 days or less from the date of the execution of this Agreement by the last party, the sum of $1,350,000 will be paid by Evanston to the Vezina, Lawrence & Piscitelli, P.A. Trust Account, and within 15 days from the date of execution of the Consent Judgment, or disclosure of the settlement, whichever is earlier, Evanston will pay the remaining limits left on the Evanston policy to the Vezina, Lawrence & Piscitelli, P.A. Trust Account, all of which collectively will be referred to as the "Settlement Sum," and which is in full and final settlement of any and all claims by, between or against DeRose and/or NSU regarding the Project and Remedial Design including the claims alleged, or which could have been alleged, against DeRose, in the lawsuit styled as *Nova Southeastern University Inc. v. Cannon Design Florida, Inc. and DeRose Design Consultants*, Broward County Circuit Court Case No.: 12-35481 (13) .(the "Lawsuit").

3.       The Parties agree that the Consent Judgment will be submitted by Nova to the Court for execution at a time of Nova's choosing, subsequent to the execution of the Assignments, Settlement Agreement and Covenant Not to Execute, and possibly after resolution of Nova's claims against Cannon in the Lawsuit, either by judgment or settlement. The Parties further agree not to disclose publically the settlement earlier than 30 days prior to the trial of the Lawsuit, as ordered by the court, or upon a date as agreed by the Parties. Nova agrees that it will have two years from the date of resolution of the Lawsuit with Cannon, either by judgment or by settlement with Cannon, to file with the Court and have entered the Consent Judgment in this action, otherwise it will be void and of no effect.

4.       Upon NSU's receipt of the Settlement Sum and assignments called for herein,  NSU shall, as specifically set out in the separate General Release attached as Exhibit B, release, remise, acquit, satisfy and forever discharge DeRose, from all and any manner of action and actions, causes, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, warranties, promises, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity from the beginning of the world to the date of this Settlement Agreement concerning the Project, the Remedial Design and the Lawsuit; provided, however, that NSU and DeRose agree that this Settlement Agreement shall have no effect on NSU's claims against any other entity or individual, specifically including Cannon, or on DeRose's rights against the Referenced Insurers or as to DeRose's rights under the Assigned Policies.

5.      NSU and DeRose have not assigned, subrogated or otherwise transferred any claim, demand, cause of action, suit, debt, due, duty, sum of money, account, reckoning, covenant, contract, agreement, promise, damage, judgment, extent, execution liability and obligation, both contingent or fixed, known or unknown, of any kind or nature whatsoever, which either have been or could have been asserted by any of them *related to the pending dispute referenced above*, except as provided in this Agreement.

6.      In consideration of the above, upon NSU's request at a time to be determined by NSU, NSU and DeRose shall cause a Consent Judgment, in the form as attached in Exhibit C, to be executed and filed with the Broward County Circuit Court.  NSU agrees not to record the Consent Judgment with any County, Federal or State registry or records office, other than as necessary for submission to the court for entry of the judgment itself, and for the purposes of pursuing any litigation against the referenced insurers or under the Assigned Policies.

7.      NSU agrees not to pursue collection of the Consent Judgment against DeRose, and hereby covenants not to seek to execute on the Consent Judgment against DeRose, pursuant to the Covenant Not to Execute, attached as Exhibit D; rather the Consent Judgment may only be satisfied from the Assigned Policies and/or the Referenced Insurers.

8.      NSU shall prepare and file a Satisfaction of the Consent Judgment on or before the later of the following triggering events: (1) the conclusion, as determined as occurring upon the entry of a judgment or order of appellate court of final jurisdiction, where the time for appeal from that judgment

or order has expired, of all litigation involving the Assigned Policies and the Referenced Insurers; (2) the settlement of all litigation or claims made by NSU under the Assigned Policies or against the referenced Insurers; or (3) five (5) years from the date of the Consent Judgment. NSU has the independent obligation to prepare and file the Satisfaction within 30 days of the event triggering the duty, (1), (2) or (3) above. However, if DeRose becomes aware of any of these triggering events having occurred, it has the right to give NSU notice of the event and demand that the Satisfaction be prepared and filed accordingly, which NSU shall do within thirty (30) days of written notice.

9.     NSU will attempt to enforce against the Referenced Insurers, the judgment contemplated by Paragraph 5, *supra*, of this Agreement. DeRose will cooperate in this effort by providing truthful testimony through Lawrence DeRose to testify in any action against the Referenced Insurers and in the Lawsuit without the need of a subpoena, and otherwise reasonably to cooperate in providing his testimony regarding the Project and the Remedial Design.

10.    NSU agrees to the following, as an inducement to Cannon for Cannon to elect to waive any right it has to pursue DeRose for indemnity (or any other claims against DeRose for damages) arising out of any settlement it enters into with NSU or any judgment entered against Cannon in the Lawsuit:

   a. In exchange for Cannon's, or its subrogee's, written waiver of any claims it has against DeRose, Cannon or its subrogee, shall receive:

      i. Set off in the full amount of the Settlement Sum from Cannon's total liability to NSU for any damages for which it has been found to be vicariously liable for the errors or omissions of DeRose, awarded against Cannon in any judgment entered in the Lawsuit, or paid by Cannon as part of any settlement with NSU; and

ii.   15% of NSU's total recovery in excess of $8 million, paid to and received by NSU in any litigation or as a result of any claim against the Referenced Insurers or under the Assigned Policies.

iii.   Cannon must elect to receive these benefits and waive any claims it may have for indemnity against DeRose within 60 days of notice of these terms of this Agreement providing these benefits of waiver.

11.   If Cannon or its subrogee pursue a claim or litigation against DeRose for indemnity or any other claims for damages arising out of any judgment entered against Cannon in the Lawsuit, or any settlement Cannon enters into resulting from the Lawsuit, NSU agrees to pay to DeRose up to $50,000.00 for DeRose to use as it sees fit in its defense of such claims. DeRose shall give notice to NSU of any such claim as soon as reasonably possible, and thereafter, shall submit invoices and bills on a monthly basis for such expenses, which shall be paid by NSU within 30 days of receipt. For the purposes of this paragraph, this notice and any subsequent bills and invoices shall be submitted to NSU in care of:  Thomas Panza, Panza, Maurer, Maynard, PA, 3600 N. Federal Highway Floor 3, Ft. Lauderdale, FL 33086.

12.   NSU shall have the right, at its expense, to call as witnesses for deposition or at the trial of the Lawsuit, or in any litigation against the Referenced Insurers, any or all of DeRose's designated expert witnesses, or to determine that any or all of these witnesses shall not appear in the Lawsuit or otherwise testify in the Lawsuit. This would not preclude DeRose from employing these experts in any later suit or claim brought by Cannon against DeRose for indemnity or related claims.

13.   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

14.   Each party shall bear its own attorneys' fees and costs.

15.   Each party agrees that the terms of this Settlement Agreement are reasonable and made in good faith.

16. In the event that an action is brought to enforce the terms of the Settlement Agreement in this matter, the prevailing party in that action shall be entitled to attorneys' fees incurred in connection with the enforcement of the terms of the Settlement Agreement and the exclusive venue and jurisdiction shall be in the Circuit Court for Broward County, Florida.

17. No modifications of this Settlement Agreement shall be effective without prior written consent of all of the parties hereto.

18. This Settlement Agreement may be executed in counterparts. Facsimile or electronic signatures may serve as originals.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement and to be executed as of the date and year set forth below.

THIS SPACE INTENTIONALLY LEFT BLANK.

DeROSE DESIGN CONSULTANTS, INC.

By: _Lawrence DeRose_
Its: _Sr. V.P._
Date: _11-9-2015_

STATE OF FLORIDA
COUNTY OF _Broward_

SWORN TO AND SUBSCRIBED BEFORE ME this _9th_ day of _November_, 2015, by _Lawrence DeRose_, who is the _Sr. V.P._ of _DeRose Design_, authorized to execute the foregoing, and who is personally known to me or who has produced _____ as identification and who did/did not take an oath.

Notary Public, State of Florida at Large

Type or Print Name: _Rhafick Williams_

My Commission Expires: _08|17|2016_

Notary Public State of Florida
Rhafick Williams
My Commission EE 223398
Expires 06/17/2016

NOVA SOUTHEASTERN UNIVERSITY, INC.

By: _George Hanbury_
Its: _President / CEO_
Date: _11/9/15_

STATE OF FLORIDA
COUNTY OF _Broward_

SWORN TO AND SUBSCRIBED BEFORE ME this _9th_ day of _November_ 2015, by _George Hanbury_, who is the _President/CEO_ of the _NSU_ authorized to execute the foregoing, and who is personally known to me or who has produced _____ as identification and who did/did not take an oath.

Notary Public, State of Florida at Large

Type or Print Name: _Shirley Naidoo_

My Commission Expires: _Nov. 30, 2017_

SHIRLEY NAIDOO
Commission # FF 047127
Expires November 30, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

Instr# 114717002 , Page 1 of 21, Recorded 11/13/2017 at 08:41 PM
Broward County Commission
Case 0:18-cv-61842-BB Document 1-1 Entered on FLSD Docket 08/08/2018 Page 46 of 49

**** FILED: BROWARD COUNTY, FL Brenda D. Forman, CLERK 11/8/2017 10:58:22 AM.****

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

NOVA SOUTHEASTERN UNIVERSITY, INC.,
a Florida corporation,

                                   CASE NO. 12-35481 (13)

      Plaintiff,

v.

CANNON DESIGN FLORIDA, INC.,
a New York corporation, and
DEROSE DESIGN CONSULTANTS, INC.,
a Florida corporation,

      Defendants.

_____/

### FINAL JUDGMENT

      Pursuant to the Settlement Agreement entered into between the Plaintiff, Nova Southeastern University, Inc. ("NSU"), and Defendant, DeRose Design Consultants, Inc. ("DeRose"), DeRose has consented to entry of a Consent Final Judgment in favor of NSU in the amount of $10,500,000.00.

      IT IS THEREFORE ORDERED AND ADJUDGED that:

      Judgment is entered in favor of Plaintiff, NSU, and against Defendant, DeRose Design Consultants, Inc., 470 S. Andrews Avenue, Suite 206, Pompano Beach, FL 33069, in the amount of $10,500,000.00, which shall bear interest at the rate of 4.75% per year.

      **DONE AND ORDERED** in Chambers, at Broward County, Florida this_____8ᴸᴸ____day of November 2017.



_____
Honorable Judge Michael Robinson



**EXHIBIT**

"D"



232 S. Wabash Ave. Chicago IL 60604

**Sheryl Webb**
Claim Specialist
Telephone   407-919-3653
            877-574-0540 x3653
Facsimile   407-670-0770
Internet    sheryl.webb@cna.com
X.400 E-Mail: P.O. Box 8317 Chicago, IL 60680-8317

January 14, 2013

Ms. Amy DeRose, President
DeRose Design Consultants, Inc.
470 South Andrews Avenue
Suite 206
Pompano Beach, FL 33069

RE:  Insured:      DeRose Design Consultants, Inc.
     Claimant:     Nova Southeastern University, Inc.
     Policy No.:   AEH-288366962
     Claim No.:    AE224989-UU
     Carrier:      Continental Casualty Company

Dear Ms. DeRose:

We are responding to this notice under your Architects & Engineers Professional Liability Policy of Insurance written through Continental Casualty Company, policy number AEH-288366962 with effective dates from January 11, 2012 to January 11, 2013.

The claim at issue arises out of a Complaint filed in Broward County Florida with case number 12-35481. Please refer to page 4 of the Complaint where it states that on January 30 2009, Amy DeRose of DeRose Consultants forwarded to John Santulli of NSU a copy of an email sent by DeRose to its insurance carrier. Please note that January 30, 2009 precedes the knowledge date of January 11, 2012 and policy term January 11, 2012 to January 11, 2013 with Continental Casualty Company.

The information submitted reveals that under this scenario, your Professional Services were rendered prior to January 11, 2012 and you were aware of an event that could reasonably be expected to become the basis of a claim and that event was reported to your prior professional liability insurance carrier. Based upon this information, your policy does not provide coverage for wrongful acts that occurred prior to the knowledge date of January 11, 2012, as shown on Declarations page of your policy. Therefore, we must regretfully decline coverage for this claim and we shall be unable to respond to this matter on your behalf.

We refer you to the policy language that applies as follows:

### I. COVERAGE AGREEMENTS

    A. We will pay all amounts in excess of the Deductible up to the Limit of Liability
       that you become legally obligated to pay as a result of:

EXHIBIT

"E"

1.  a **wrongful act;**

2.  a **pollution incident** arising out of **your** activities or the activities of any person or entity for whom **you** are legally liable; that results in a **claim** anywhere in the world, provided that on the Knowledge Date set forth in Item 4. on the Declarations none of **your** officers, directors, principals, partners, or insurance managers knew of any act, error, omission, or event that could reasonably be expected to become the basis of that **claim.**

## III.   DEFINITIONS

T.   **Wrongful Act** means an error, omission or other act that causes liability in the performance of **professional services** for others by **you** or any person or entity, including joint ventures, for whom **you** are liable. A **wrongful act** cannot arise from dishonest, fraudulent, malicious, or criminal conduct committed by **you** or at **your** direction or with **your** prior knowledge.

In addition, these views are not intended in any way to be exhaustive or exclusive, and we expressly reserve all of our rights under the policy, including, but not limited to, the right to raise additional policy terms and conditions as defenses to coverage, as appropriate. Our failure to cite other policy language at this time does not preclude us from raising other defenses in the future should the situation warrant.

In the event we have misstated the facts above or should you have or obtain any information you believe we should further consider, please provide that information to us for our further review.

I am sorry we are not able to assist you with this, however, I would suggest you share this letter with your legal counsel in the event that a copy of your insurance policy is requested. He will be able to advise them of our coverage position. We also recommend notifying your former carrier so they may take steps to protect the interests of your firm.

If you have any questions, please do not hesitate to contact me.

Respectfully yours,

Sheryl Webb
PLG Claims Specialist

cc:  Ms. Barb Hinson
     Specialty Brokerage Services
     2000 Polaris Parkway
     Columbus, OH  43240